IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Randall Jay Kaplun,           :

    Plaintiff,               :

  v.                           :     Case No. 2:14-cv-0439

                             :     JUDGE GREGORY L. FROST
Commissioner of Social Security,    Magistrate Judge Kemp
                             :
    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Randall Jay Kaplun, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on April 12, 2011, and alleged that Plaintiff became disabled on June 11, 2010.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on March 19, 2013. In a decision dated March 22, 2013, the ALJ denied benefits. That became the Commissioner's final decision on March 13, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on July 29, 2014. Plaintiff filed his statement of specific errors on September 2, 2014, to which the Commissioner responded on October 21, 2014. No reply brief has been filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 51 years old at the time of the administrative hearing and who has a high school education, testified as follows. His testimony appears at pages 84-100 of

the administrative record.

    Plaintiff first testified about injuring his back at work. He was unloading goods from a truck and felt his back "snap" while lifting a pallet. He attempted light duty work after that, but when he could not go back to his regular job after eleven weeks, his employment was terminated. His back has continued to get worse since then to the point where he can neither stand nor sit for very long. Prior to becoming an unloader, he worked construction jobs. He had also worked in a steel factory.

    Plaintiff said that he was unable to work due to his back problems. He had been treated with injections and had been seen in a pain clinic. The pain clinic prescribed medications which made him groggy, and also performed several nerve blocks which did not relieve his pain. At the time of the hearing, he was taking only over-the-counter medications.

    As far as his physical capabilities were concerned, Plaintiff testified that he could stand for fifteen or twenty minutes and sit about the same amount of time. He could lift fifteen or twenty pounds and did not do any activities which required him to bend, crouch, or stoop.

    In a typical day, Plaintiff would lie down for most of the morning. He was not able to fix meals for himself or do any yard work. He also watched television and occasionally visited with a friend. He was able to do some shopping but not on a sustained basis. He needed some help getting dressed. He had difficulty sleeping due to pain and a sinus problem and had to nap on a daily basis. If he did any activity, he had three or four days of increased pain, and he had twelve to fifteen bad days a month.

### III. The Medical Records

    The medical records in this case are found beginning on page 325 of the administrative record. The pertinent records - those relating to Plaintiff's two statements of error - can be

summarized as follows.

An MRI of Plaintiff's lumbar spine taken on January 31, 2011, showed dessication of the L2-3 disc with moderate loss of disc height and focal posterior annular fiber rupture, and diffuse bulging from L2-L5 with mild spinal canal narrowing and mild bilateral foraminal stenosis. (Tr. 325). Mild lumbar stenosis was diagnosed based on these findings. No surgery was recommended. (Tr. 326).

A subsequent note from Dr. Ream, Plaintiff's treating physician, confirmed that he was not a surgical candidate, and stated that he suffered from chronic low back pain. (Tr. 332). On the same day that note was made (June 15, 2011), Dr. Ream completed a "Physician's Statement of Functionality" on which he indicated that the primary diagnosis was low back pain, with a secondary diagnosis of a bulge or rupture at L2-3 and degenerative disc disease. At that point, Dr. Ream had been seeing Plaintiff for about nine months. He thought Plaintiff could lift and carry up to twenty pounds occasionally, that he could sit, stand, and walk for up to twenty minutes at a time, with breaks, and that he could sit for a total of four hours in a workday, accompanied by two hours of standing and two hours of walking. (Tr. 333-34). Prior office notes showed that results of examinations were essentially normal, with some diffuse lumbar tenderness and negative straight leg raising noted.

Dr. Ream subsequently completed a "Lumbar Spine Impairment Questionnaire." There, he stated he first treated Plaintiff on May 3, 2011 and had not seen him since July 25, 2011. His diagnoses included an L1 compression fracture as well as the prior diagnoses. Dr. Ream described Plaintiff's prognosis as "guarded" and reported his clinical findings as limited range of lateral motion and some tenderness. Other symptoms, such as abnormal gait, sensory loss, reflex changes, muscle atrophy, and

weakness, were not observed.  The MRI was the only test result reported.  Dr. Ream said that prolonged sitting would cause pain but that standing would help to alleviate it.  Nonetheless, he concluded that Plaintiff could sit for only an hour in a workday and stand or walk the same amount of time.  Plaintiff could not sit continuously and had to get up and move around every fifteen minutes.  His lifting was limited to 20 pounds, and pain would constantly interfere with the ability to attend and concentrate.  Finally, Dr. Ream believed that Plaintiff needed to take unscheduled breaks every fifteen minutes and that he could not push, pull, kneel, bend, or stoop.  (Tr. 352-58).  Later, Dr. Ream completed a statement of disability for the Hartford Insurance Company on which he indicated that Plaintiff could sit for eight hours in a workday and stand and walk for one hour each, and that he could occasionally kneel and crouch.  (Tr. 382-83).

Plaintiff's records were reviewed by state agency physicians.  Dr. Albert thought that Plaintiff could do a range of medium work and could return to at least one of his past jobs.  (Tr. 109-15).  Dr. Manos, who had the opportunity to review some of Dr. Ream's records, essentially concurred, noting that Dr. Ream's conclusions about Plaintiff's ability to sit, stand, and walk were not consistent with the evidence.  (Tr. 121-23).

### IV.  The Vocational Testimony

Larry Ostrowski was the vocational expert in this case.  His testimony begins on page 100 of the administrative record.

Mr. Ostrowski testified that Plaintiff's past work included stores laborer, construction worker, and slitting machine operator.  Those jobs were, respectively, unskilled, semi-skilled, and skilled, and were performed at either the medium or heavy exertional levels.

Mr. Ostrowski was then asked some questions about a

hypothetical person who could work only at the light exertional level and was limited to occasional stooping and climbing. He said that such a person could not do any of Plaintiff's past work but could do jobs like marker, mail clerk, or electronic accessories assembler. To keep these jobs, an employee could not miss more than two days of work per month and would be limited to two fifteen-minute breaks in the day, with thirty minutes for lunch. The employee also could not be off task for more than ten percent of the day.

In response to questions from Plaintiff's counsel, Mr. Ostrowski testified that someone who needed a sit/stand option and who could stand or walk for no more than two hours a day could do some light jobs. Mr. Ostrowski could not, however, identify any jobs that could be done by someone who could do no walking during the workday, who could stand for one hour, and who could sit for seven hours, nor would there be jobs for someone who could sit for only one hour a day and stand for the same amount of time.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14-21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 11, 2010. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine and obesity. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404,

Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level which required no more than occasional stooping and climbing. The ALJ found that, with these restrictions, Plaintiff could not do his past work. However, he also determined that Plaintiff could do the jobs identified by the vocational expert, including marker, mail clerk, and electronic accessory assembler. The ALJ further found that such jobs existed in significant numbers in the local and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ violated the "treating physician" rule found in 20 C.F.R. §404.1527(c) with respect to the opinions expressed by Dr. Ream; and (2) the ALJ did not properly evaluate Plaintiff's credibility. These issues are evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.

1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A. <u>The Treating Physician</u>

The only treating source opinions came from Dr. Ream. The ALJ gave these opinions little weight, finding that they were inconsistent with the other medical evidence in the record, including Dr. Ream's own notes. Plaintiff argues that the ALJ did not articulate good reasons for rejecting Dr. Ream's opinions, as is required by 20 C.F.R. §404.1527(c), and also that he should have accorded more weight to the opinions.

Any analysis of this issue begins with what the ALJ's discussion of the treating source opinions. Here, the ALJ said:

> The undersigned has also considered the opinion of Thomas Reams (sic), M.D., the claimant's primary care physician, but accords it little weight. His assessments are inconsistent with the medical evidence (including his own treatment notes), the objective findings, and physical examinations. Further, his opinion appears to be an overestimate of the claimant's limitations for any consecutive 12-month period based on the claimant's treatment and activities (Exhibits 3F, 5F, and 7F).

(Tr. 19). The ALJ also accorded great weight to the opinions of the state agency physicians, pointing out their consistency with the medical evidence, but he gave Plaintiff "the utmost benefit

of the doubt as to his symptoms" and reduced his residual functional capacity finding from medium to light. Id.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Against Plaintiff's claim that the ALJ neither explained his decision adequately nor had substantial evidence to support it, the Commissioner presents this argument. The Commissioner notes that the ALJ performed an extensive review of the medical and other evidence and correctly determined that much of that evidence does not support a claim of disabling symptoms. That includes the normal findings, apart from some tenderness, during

Dr. Ream's examinations, and other negative tests as well.  The Commissioner acknowledges that the residual functional capacity finding does not track exactly the opinion of any treating or reviewing source, but contends that the state agency reviewers' opinions that Plaintiff could do medium work encompasses a finding that he could do light work as well.  Consequently, the Commissioner concludes that the ALJ's opinion was both well-supported and adequately explained.

    The ALJ's articulated rationale for rejecting Dr. Ream's opinion is, at best, marginally sufficient to satisfy the articulation requirement found in §404.1527(c).  However, the clear import of his brief reference to the absence of support for Dr. Ream's opinions in his own treatment notes is to incorporate the findings, made in the paragraphs which immediately precede the one quoted above, that "physical examinations throughout the record are essentially normal with normal neurological examinations, 5/5 muscle strength, intact sensation, negative straight leg-raising tests, and normal gait."  (Tr. 18-19).  The examination results referred to are those obtained by Dr. Ream.  The same is true of the ALJ's reference to a negative EMG, to the sporadic nature of treatment, and the fact that for a period of time "the record shows only routine visits with Dr. Ream" and then no back treatment after September, 2011.  (Tr. 20).  The lack of prescriptions for pain medication referred to at Tr. 20 also stem in part from Dr. Ream's treatment notes.  These are valid reasons for discounting the opinions of a treating source and are supported by the record. See Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation")(internal citations and quotations omitted).

    Plaintiff also argues, however, that the ALJ's residual functional capacity finding is flawed because it does not track

precisely either the opinions of Dr. Ream, which the ALJ rejected, nor the opinions of the state agency reviewers, who thought that Plaintiff could do medium work. The Commissioner points out, however, that the capacity to do medium work includes the capacity to do light work. Further, any error in not adopting the state agency reviewers' opinions in their entirety - as opposed to the ALJ's approach of according them significant weight but giving Plaintiff the benefit of the doubt based on is testimony - would be harmless, since that approach is also more favorable to the Plaintiff. See Miller v. Astrue, 2011 WL 3205316, *16 (M.D. Tenn. July 27, 2011), adopted and affirmed 2011 WL 3704128 (M.D. Tenn. Aug. 23, 2011)(finding that an RFC for light work was supported by state agency physician assessments that the claimant could do medium work). Finally, the blending of opinion evidence to come up with an RFC that takes elements of each is not necessarily error. See, e.g., White v. Comm'r of Social Security, 2013 WL 4414727 (E.D. Mich. Aug. 14 2013)(finding less than complete reliance on a reviewing physician's opinion reasonable in light of the record as a whole). Consequently, the Court finds Plaintiff's first assignment of error to be without merit.

### B. The Credibility Finding

Plaintiff's second claim of error attacks the ALJ's credibility determination. According to Plaintiff, the ALJ erred because some of the reasons offered by the ALJ for discounting Plaintiff's testimony were not supported by the record. In particular, he suggests that the ALJ overemphasized the significance of his activities of daily living and mischaracterized the medical evidence. He also claims that the ALJ should not have used his lack of aggressive medical treatment as a reason to find his descriptions of his limitations and symptoms to be less than fully credible. The Commissioner argues, in response, that the ALJ's credibility determination is

-10-

entitled to substantial deference and that the reasons given by the ALJ for that determination are all supported by the record.

The law in this area is well-established. A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Here, the ALJ cited to the following factors as part of his credibility determination. First, Plaintiff went back to work for eleven weeks after his onset date at a reduced exertional level. Second, he was able to do various activities such as walking his dog, visiting with relatives, and driving. Third, most of the physical examinations were normal, and many tests were negative (although the MRI had some mild findings). Fourth, he has refused pain medication. Fifth, he received treatment only sporadically. (Tr. 19). All of these factors are present in the record.

What Plaintiff's credibility argument really amounts to is his disagreement with the weight which the ALJ assigned to each of these factors. He contends, for example, that he adequately explained the lack of consistent treatment and the fact that he took only over-the-counter medication, and that he reported that he could not tolerate even the light-duty job he was given after

-11-

his injury. But the ALJ was not required to accept these explanations, especially where, as here, some of them are not supported by any evidence apart from Plaintiff's own testimony. The history of Plaintiff's medical examinations and treatment, in particular, is not strongly supportive of a claim of the inability to do any work activity at all, and the ALJ was entitled, as the primary fact-finder, to make that determination.

It is important to keep in mind that "[i]t is ... for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." Rogers v. Comm'r of Social Security, 486 F.3d 234, 247 (6th Cir. 2007). A claimant may "ask[] the Court to reweigh the evidence, give her the benefit of the doubt to the extent that these facts may weigh in her favor and then advance a different view;" but that would not be proper because "the Court is charged with determining the sufficiency of the evidence, not its weight." Thomas v. Comm'r of Social Security, 2014 WL 2114567, *16 (N.D. Ohio May 20, 2014). Courts agree that "an ALJ may give less weight to the testimony of interested witnesses," see Obuch v. Hluchaniuk, 2009 WL 877697, *18 (E.D. Mich. March 30, 2009), and the claimant is an interested witness (that is, someone with a stake in the outcome of the case). Further, this Court has recognized that "relative lack of treatment and few objective or clinical records ... [may] undermine[ a] Plaintiff's credibility ...." Eversole v. Comm'r of Social Security, 2013 WL 2948328, *11 (S.D.Ohio June 14, 2013), adopted and affirmed 2013 WL 3965289 (S.D. Ohio July 31, 2013).

Given that an ALJ's credibility finding is something that a reviewing court "may not disturb absent compelling reason," Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001), and the fact that Plaintiff has not advanced a compelling reason in this case, it would be inappropriate for this Court to second-guess how the ALJ weighed the various factors which touched on Plaintiff's

credibility. A different judge might have come to a different conclusion based on these facts, but, as the Court of Appeals has often noted, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001). Since that is the case here, there is no merit to Plaintiff's second claim of error.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>  
United States Magistrate Judge